■ In the Matter of COUNTY OF SUFFOLK, Appellant. EVAN FIRESTER et al., Respondents.— In a condemnation proceeding, the condemnor appeals from a judgment of the Supreme Court, Suffolk County, entered January 31, 1973, which, after a nonjury trial, awarded the claimants $630,000. Judgment modified, on the facts, by reducing the award to $390,000. As so modified, judgment affirmed, without costs. The property in question consists of 126 acres, undeveloped, located in the Town of East Hampton, Suffolk County. It is in a Residence " A " district, which requires a minimum of one acre per one-family dwelling. It fronts for about 5,035 feet on an inlet known as Northwest Creek which in turn flows north into Gardiners Bay. Experts produced by both sides, despite reliance on three identical comparable sales, reached widely divergent conclusions as to the per acre value of the property. The condemnor's expert placed a raw acreage value on the property of $5,000 per acre, while the claimants' expert set

the value at $11,000 per acre. The rule in every condemnation proceeding is that the owner is entitled to receive the fair market value of the property taken from him based on the most advantageous use to which it can be put (*Hazard Lewis Farms* v. *State of New York*, 1 A D 2d 923, 924). There is no dispute that the most advantageous use for the claimants' property at the time of the taking was a potential real estate subdivision. Actually, the property had never been subdivided. There had been a preliminary map filed with the Planning Board in June, 1968, but it was never acted upon. No lots had been offered for sale. The correct rule to be applied under these circumstances is to treat the premises not as raw acreage or as part of a completed development, but as a potential subdivision site, giving the acreage an increment in value because of that potential use (*Hewitt* v. *State of New York*, 18 A D 2d 1128). In its memorandum decision, Special Term said: "This Court, after inspecting the subject property as well as the comparable sales used by the experts, is in agreement with Given's [the condemnor's expert] valuation of $5,000.00 per acre and finds this to be the value of the property as of the date of vesting" (bracketed matter supplied). The award of $630,000 represents the product of multiplying 126 acres by $5,000 per acre. In our opinion, this award is improper, because it represents a raw acreage award rather than one for a potential subdivision. The $5,000 per acre figure, giving an increment to the raw acreage value for its "potential", is reasonable for the 66 acres of upland property, but clearly not for the remaining 60 acres, which was described variously as swampy, marshland, underwater, and "worthless". The latter 60-acre area would require considerably more work and expense than the 66-acre area in order to make it available for residential construction. Tremendous quantities of fill would be required before this portion could be brought up to the level specified by the town's subdivision requirements, i.e., seven feet above mean high water. From indications in the record that the town would oppose dredging nearby, the inevitable conclusion is that the cost of fill alone would be very high. On top of that must be added the cost of drainage, sewers, a sewage treatment plant and other items required because of the property's swampy condition. This would have a negative effect on the raw acreage value of these 60 acres (see *Valley Stream Lawns* v. *State of New York*, 9 A D 2d 149; *Matter of Town of Hempstead* [*Seaford*], 52 Misc 2d 554, 558). While we agree that they would have no practical value for subdivision development, we do not agree that they have no value at all. Nor do we agree with the condemnor's expert that the negative effect of the cost of developing the lowland must be applied also against the upland, thus materially devaluating that. Based upon the extensive record before us as to the value of land in the East Hampton area of Suffolk County, we conclude that the award for the entire parcel should be reduced to $390,000. This reflects a fair market value of the upland 66 acres at $5,000 per acre and that of the lower 60 acres at $1,000 per acre. Shapiro, Acting P. J., Cohalan, Christ, Benjamin and Munder, JJ., concur.